# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VIKRAMVIR SINGH,

      Petitioner,

      v.                                  Case No. 1:26-cv-00399 KWR-JHR

KRISTI NOEM*, Secretary of the Department*
*of Homeland Security,*
GEORGE DEDOS, *Warden of the Torrance County Detention Facility,*
MARY DE ANDA-YBARRA, *ICE Field Office Director, El Paso Field Office*,
*and* PAMELA BONDI, *Attorney General of the United States,*

      Respondents.

## ORDER GRANTING HABEAS PETITION

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 2**). Having reviewed the parties' pleadings, briefing, and the relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED.** The Court orders Respondents to immediately release Petitioner.

## BACKGROUND

Petitioner is a citizen of India and is detained pending a decision on his removal from the country. He is detained by Respondents at the Torrance County Detention Facility in New Mexico. Petitioner first entered the United States on or about August 9, 2013, when he was a minor. Pet. ¶ 16, Doc. 2. He was granted Special Immigrant Juvenile ("SIJ") status in 2015 after a state juvenile court found that reunification with one or both parents was not viable due to abuse, neglect, abandonment, or a similar basis under state law. *Id*. ¶ 15. Petitioner has since resided in the United States, obtained lawful employment, and is pursuing lawful permanent resident status. *Id.*

On April 28, 2015, Petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust status, which remains pending. *Id.* ¶ 17. He is not subject to a final order of removal and continues to pursue lawful permanent resident status. *Id.* Five years later, Petitioner's removal proceedings were terminated without prejudice on March 30, 2020 due to the approval of his SIJ status. Doc. 7-2 at 1 ("Reason for termination: Respondent has an approved I-360").

On August 20, 2025, Petitioner was arrested by DHS pursuant to a Form I-200 arrest warrant at the Nassau County Probation Office. Doc. 7 at 2. He was arrested by DHS after being convicted of a misdemeanor for selling unstamped cigarettes, for which he paid a $250 fine. Doc. 7 at 2 (citing Doc. 7, Ex. 1); Doc. 8 at 2 (citing Doc. 8-4). Respondents do not argue that this misdemeanor conviction for selling unstamped cigarettes requires his detention under § 1226(c) or any other provision.

On September 19, 2025, DHS placed Petitioner in removal proceedings under section 240 of the Immigration and Nationality Act. Pet. ¶ 18. He has been detained since then without the opportunity to seek bond. *Id.*

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). Here, a bond hearing was held, but the immigration judge concluded that he lacked jurisdiction because Petitioner was an arriving alien. Pet. ¶ 20

In sum, Petitioner has remained in federal immigration custody without an opportunity to post bond or request a conditional release because his detention has been classified as mandatory

under 8 U.S.C. § 1225(b).  Petitioner requests that the Court issue a writ of habeas corpus directing his immediate release.

Respondents filed a response to the Petition in which they incorporated the arguments they raised in a prior case before the Court. *See* Resp., Doc. 7 at 2 (citing *Munoz Teran v. Bondi*, 2:25-cv-1218 KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026)). The Respondents' response in *Munoz Teran* did not raise administrative exhaustion. Therefore, the Court declines to *sua sponte* raise administrative exhaustion. Moreover, the Respondents' response in *Munoz Teran* did not assert that the petitioner was mandatorily detained under § 1225(b)(1) as an arriving alien. In this case, Respondents do not substantively argue that Petitioner is mandatorily detained under § 1225(b)(1). *See* Doc. 7 at 4 n.4. They admit he is not placed in expedited removal proceedings, and he has lived in the United States for approximately thirteen years.  *Id.*  Moreover, his original removal proceedings were terminated because he has an approved SIJ status. Doc. 7-2 at 1 ("Reason for termination: Respondent has an approved I-360"). SIJ status is a path toward legal permanent residency, and he has an application for legal permanent residency pending for ten years.  Pet. ¶ 17.[1] Because Respondents did not substantively argue that he is mandatorily detained under § 1225(b)(1) and did not explain how the specific mandatory detention provisions under § 1225(b)(1)(B)(ii) and (iii)(IV) apply here, the Court does not *sua sponte* address whether he is detained under § 1225(b)(1). Rather, the issue is whether §§ 1225(b)(2)(A) or 1226(a) applies to Petitioner.

### LEGAL STANDARD

---

[1] The INA defines a "special immigrant" in part as "an immigrant who is *present* in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added)."Because [Petitioner] was awarded SIJ status …which converted him from being an arriving alien to an alien present in the United States, he was entitled to a bond hearing in June 2023 under § 1226(a)." *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024).

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## DISCUSSION

Petitioner asserts in his § 2241 habeas petition that he is in custody in violation of the Constitution or laws of the United States, and he should be released. Respondents assert that Petitioner is mandatorily detained pursuant to § 1225(b)(2)(A).  At issue is whether Petitioner is appropriately mandatorily detained under that section, or whether he should have been processed under the discretionary detention provisions of § 1226(a). As explained below, Petitioner, who has lived in the United States for years, is subject to the discretionary detention provisions of § 1226(a).

## I. The discretionary detention provisions under § 1226(a) apply to Petitioner, rather than the mandatory detention provisions under § 1225(b)(2)(A). [2]

At issue is whether § 1225(b)(2)(A) or § 1226(a) governs Petitioner's detention while a decision on his removal is pending. Mandatory detention under § 1225(b)(2)(A) applies to noncitizens "seeking admission" into the United States.  Petitioner asserts that he is entitled to a bond hearing or immediate release pursuant to § 1226(a), as he has resided in the United States for

---

[2] Section I is taken from several other opinions issued by the undersigned.  *See, e.g., Camac-Huanca v. Noem*, No. 2:25-CV-01253 KWR-JFR, 2026 WL 357651, at *2-6 (D.N.M. Feb. 9, 2026).

years and is not "seeking admission" into the United States. Despite this statutory language, Respondents argue that the mandatory detention provision under § 1225(b)(2)(A) applies, as that provision covers not only those who present themselves at the border, but any noncitizen who is present in the United States without admission, pending a decision on removal. *See, e.g., Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). As explained below, the statutory phrase "seeking admission" cannot be interpreted to apply to Petitioner, who has lived in the United States for years. Therefore, Petitioner is entitled to a bond hearing under § 1226(a).

In construing the statute at issue, the Court begins with its plain text. *See Chickasaw Nation v. United States,* 208 F.3d 871, 876 (10th Cir. 2000). "If the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." *Id*. In ascertaining the meaning of the text, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.,* 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the broader context of the statute as a whole when ascertaining the meaning of a particular provision."). The Court also considers traditional canons of statutory interpretation. *Conrad,* 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court only considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, if statutory language is ambiguous. *See, e.g., United States v. Husted,* 545 F.3d 1240, 1247 (10th Cir. 2008).

The Immigration and Nationality Act ("INA") generally contemplates two detention regimes for noncitizens pending a decision on removal. *See Jennings v. Rodriguez*, 583 U.S. 281,

289 (2018). The first detention regime provides that when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted," the noncitizen "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). This provision mandates detention and does not expressly afford a bond hearing. *Id.* Section 1225 has exceptions to mandatory detention, which are not relevant here. The second detention regime authorizes the arrest and detention "on a warrant issued by the Attorney General" of noncitizens "pending a decision on whether [they are] to be removed." 8 U.S.C. § 1226(a). Section 1226(a) expressly authorizes the Attorney General to detain the arrested noncitizen, or release them on bond or conditional parole. *Id.* Section 1226(c) has certain exceptions which mandate detention. For example, mandatory detention under § 1226(c) applies to a noncitizen who is (1) "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General" and (2) "charged with, is arrested for, is convicted of, [or] admits having committed" certain criminal acts. § 1226(c)(1)(E).

Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added), *quoted in Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (concluding that § 1226(a) applied to noncitizens already present in country who were not admitted).

Thus, for § 1225(b)(2)(A)'s mandatory detention proceedings to apply, the Court must find as follows: (1) the noncitizen is "an applicant for admission", (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted."

Respondents argue that Petitioner is an applicant for admission and the § 1225(b)(2)(A) mandatory detention provisions apply. Petitioner is likely an applicant for admission under the statute. Here, an "applicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Because Petitioner is present in the United States and has not been admitted, he may be deemed by the statute to be an "applicant for admission," satisfying the first criteria of § 1225(b)(2)(A).

But the detention provision under § 1225(b)(2)(A) applies only to noncitizens "seeking admission." § 1225(b)(2)(A). As explained below, under the plain meaning of the statute, Petitioner, who has been living in the United States for years, is not "seeking admission." *Id.* "Admission" is defined as "the lawful entry of the noncitizen into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The term "entry" is undefined in the statute. And Respondents do not argue that "entry" has any technical meaning in the statutory provisions at issue. Assuming it has no technical meaning, it can be given its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotation marks omitted); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning.").

"Entry" most commonly means "[t]he action or an act of entering a place, area, building, etc." Entry, Oxford English Dictionary (2018); Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/entry (last visited January 21, 2026) ("the act of entering"); Entry, Black's Law Dictionary (12th ed. 2024) ("*Immigration.* Any entrance of an alien into the United States, whether voluntary or involuntary."). "Seeking" in this context most

naturally means trying to obtain something or trying to bring about or effect. Seek, Oxford English Dictionary Online (2018). "Seeking" is also in the present participle form, which expresses present action. Present Participle, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited January 21, 2026); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771,  781 (E.D. Mich. Aug. 29, 2025) (The use of the present participle in § 1225(b)(2)(A) "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Taken together, the "seeking admission" phrase in § 1225(b)(2)(A) applies to noncitizens who are trying to lawfully and physically enter the country. It does not apply to noncitizens who have lived in the United States for years and are not seeking lawful entry into the United States.[3]

Respondents appear to suggest that all "applicants for admission" are deemed to be "seeking admission." Respondents essentially interpret "seeking admission" as coterminous with "applicants for admission."  Respondents' construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.")). "If an interpretation of one

---

[3] The Court's understanding of the plain, ordinary meaning of the word "entry" in this statute, *i.e.*, that entry means the physical act of going into the country, accords with how it is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long been used to refer to physically going into the country, regardless of whether the entrant is legally in the United States.  *See, e.g., Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

provision 'would render another provision superfluous,' courts presume that interpretation is incorrect." *Castanon-Nava,* 161 F.4th at 1061 (quoting in part *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). "And this presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Castanon-Nava,* 161 F.4th at 1061 (quoting in part *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Therefore, the Court declines to interpret "seeking admission" in a manner wholly synonymous with "applicant for admission."

Rather than the two phrases being synonymous, the statutory language elsewhere in § 1225 appears to distinguish the phrase "applicants for admission" from the phrase "seeking admission," suggesting that these phrases have separate meanings. Section § 1225(a)(3) provides that "All aliens … *who are applicants for admission or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* (emphasis added). The word "or" in its "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Taken together, "or otherwise" is "used to refer to something that is different from something already mentioned." *Or otherwise*, Merriam Webster Online, https://www.merriam-webster.com/dictionary/or%20otherwise (last visited January 12, 2026). If "applicant for admission" had the same meaning as "seeking admission", there would be no need to repeat the phrase "seeking admission" or use the phrase "or otherwise." Thus, it is clear that the phrases "applicants for admission" and "seeking admission" do not have the same meaning.

Respondents' interpretation would also render superfluous recent amendments to § 1226(c). Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in

9

certain crimes. Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (1) who is inadmissible under § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (2) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). Under Respondents' interpretation, all noncitizen who are present in the country without being admitted or paroled must already be mandatorily detained under § 1225(b)(2)(A), rendering the recent amendment superfluous. Generally, courts "do not lightly" find that Congress adopted "two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

The Court's interpretation of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g., Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025); *see also Barco Mercado v. Francis,* No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D. N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States.") (quotation marks omitted); *Buenrostro-Mendez v. Pamela Bondi,* _F.4th _, 2026 WL 323330, at *10 (5th Cir. 2026) (Douglas, J. dissenting).

The Court's interpretation is also consistent with the Supreme Court of the United States' dicta. In *Jennings*, the Supreme Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings,* 583 U.S. at 297. In contrast, the Court explained that Section 1226 "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a)

creates a default rule for those aliens [present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits the Attorney General to release those aliens on bond." *Id.* The *Jennings* Court's description of the relationship between §§ 1225 and 1226 is consistent with this court's conclusion.

Respondents argue that the Court's interpretation would treat noncitizens unlawfully present in the United States preferentially to noncitizens who arrive at the border. They imply this would be unfair or would reward noncitizens who pass the border without inspection. Because the statutory language is unambiguous, the Court's task is to ascertain its plain meaning, and the Court generally should not address this extra-textual policy consideration. *See McGraw v. Barnhart*, 450 F.3d 493, 499 (10th Cir. 2006). Alternatively, this seemingly different treatment of those who are already present in the United States is well-supported in case law. "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693; *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Respondents cite a decision by the BIA holding that § 1225(b)(2)(A) applies to noncitizens present in the country who were not inspected at the border. *See Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025). *Hurtado* is not binding on this court, and the agency's interpretation carries only the "power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024). As explained above, the Court does not find *Hurtado* persuasive.

11

Here, applying the above statutory interpretation to the facts of this case, it is clear that Petitioner is not "seeking admission" under § 1225(b)(2)(A). He has lived in the United States for years. And neither the Petition nor the Respondents' Response identified any facts to suggest Petitioner was "seeking admission", i.e., lawful physical entry into the country, at the time of his arrest. Therefore, it is clear that the detention provision under § 1225(b)(2)(A) does not apply to Petitioner.

Instead, Section 1226(a), the default, more general detention provision pending a decision on removal, governs Petitioner's detention. "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings*, 583 U.S. at 288. Thus, the Court grants in part the Petition.

## II.      **<u>Alternatively, Petitioner's due process rights were violated</u>.**

Petitioner also asserts that his due process rights were violated as he was mandatorily detained without the opportunity to seek release under § 1226(a). The Court alternatively finds that Respondents violated Petitioner's due process rights.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. Under the Fifth Amendment, noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Thus, immigration detainees pending removal "are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

Courts analyze due process claims in two steps. First, the Court asks whether there exists a protected liberty interest under the Due Process Clause. Second, the Court examines the

procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). "Protected liberty interests may arise from two sources-the Due Process Clause itself and the laws of the States." *Id.* (internal quotation marks omitted).

As to the first step, Petitioner, who has lived in the United States for thirteen years, clearly has a liberty interest in being free from detention under the Due Process Clause, or alternatively has a liberty interest in obtaining a discretionary bond hearing under § 1226(a). Here, Petitioner was not afforded a bond hearing under § 1226(a).

Since the Court finds that Petitioner has a protected liberty interest, the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Thompson*, 490 U.S. at 460. In analyzing what process is due, courts must analyze "the governmental and private interests that are affected." *United States v. Muhtorov*, 20 F.4th 558, 624 (10th Cir. 2021) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). Courts consider the following three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional procedural safeguards; and (3) the Government's interest, such as the function involved, and the fiscal and administrative burdens additional safeguards would entail. *Mathew*s, 424 U.S. at 335.

The Court notes that Petitioner was granted SIJ status. The Court explains Petitioner's SIJ status because it informs the Court's due process analysis below. "Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned children who, with their families, illegally entered the United States." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018) (internal quotation marks omitted). Noncitizen "children may receive SIJ

status only after satisfying a set of rigorous, congressionally defined eligibility criteria, including

that a juvenile court find it would not be in the child's best interest to return to her country of last

habitual residence and that the child is dependent on the court or placed in the custody of the state

or someone appointed by the state." *Id.* (citing 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)).

"The child must also receive approval from USCIS and the consent of the Secretary of Homeland

Security to obtain the status." *Id.* The Third Circuit further explained that:

> Once attained, SIJ classification conveys a host of important benefits. For purposes of 8 U.S.C. § 1255(a), which describes adjustment of status, SIJ designees are "deemed ... to have been paroled into the United States." 8 U.S.C. § 1255(h)(1). Moreover, the INA automatically exempts SIJ designees from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility also may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2), 1182(a). Of particular note, the INA exempts SIJ designees from inadmissibility based on the lack of "valid entry document[s]," *id.* § 1182(a)(7)(A)(i)(I)—the very ground on which the Government alleges Petitioners are eligible for expedited removal. App. 437 (citing 8 U.S.C. § 1225(b)(1)). Additionally, Congress has granted SIJ designees various forms of support within the United States, such as access to federally funded educational programming and preferential status when seeking employment-based visas. *See id.* §§ 1232(d)(4)(A), 1153(b)(4).
>
> Finally, SIJ status, once granted, may not be revoked except "on notice," 8 C.F.R. § 205.2, and upon the Government's compliance with a series of procedural safeguards: The Secretary of Homeland Security must find "good and sufficient cause" for revocation; the agency must provide notice of intent to revoke; and the SIJ designee must be given the opportunity to present evidence opposing revocation. 8 U.S.C. § 1155; 8 C.F.R. § 205.2; *see also* 7 USCIS Policy Manual, pt. F, ch. 7 (Mar. 21, 2018).

*Id.* at 163-64.  Here, Petitioner attained SIJ status, and the benefits above. Petitioner alleges that

his Form I-485 application for permanent residency cannot be adjudicated while he is in custody,

but he cannot be removed because he is exempt from the sole charge of inadmissibility. Thus, he

appears to assert he is stuck in detention without a likelihood of removal. Doc. 8 at 3; *See, e.g.,*

*Alfaro Herrera v. Baltazar*, No. 1:25-CV-04014-CNS, 2026 WL 91470, at *8 (D. Colo. Jan. 13,

2026) (explaining that SIJ status noncitizen who was detained similarly lacked a likelihood of

removal). However, the immigration judge stated that he is removable. *See, e.g.,* doc. 7-6. Other courts have also held a person with SIJ status may be removable. *See Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023). Whether or not his SIJ status prevents his removal, he may have a path toward permanent legal residency. This informs the Court's analysis of the *Mathews* factors below.

As to the first *Mathews* factor, Petitioner was deprived of his right to seek discretionary release under § 1226(a) because his detention was erroneously classified as mandatory under § 1225(b)(2)(A). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Although he was paroled into the United States, he was granted SIJ status and his removal proceedings were dismissed due to his SIJ status. Petitioner has lived in the United States for more than ten years under an SIJ status. He had a statutory right to discretionary detention review under § 1226(a), which he did not receive.

As to the second factor, there is a significant risk of erroneous deprivation of his liberty interest. Petitioner has been detained since August 2025 without the opportunity to seek release under § 1226(a) or to show that he is not a flight risk or danger to the community. Petitioner was erroneously classified under mandatory detention provisions. Petitioner was previously paroled into the United States and received SIJ status, a pathway to permanent residency. Nothing in the record suggests he would not show up to removal proceedings as scheduled. Respondents have not moved to revoke his SIJ status, and his permanent residency application has been pending for ten years. Petitioner has one misdemeanor conviction for unstamped cigarettes, for which he paid a

fine. Respondents do not argue that he should be mandatorily detained because of his misdemeanor conviction for unstamped cigarettes. Under these unique circumstances, the Court sees no reason for him to stay in custody, and Respondents have not argued any. Notably, Respondents do not argue that he is a flight risk or danger to the community such that he may be detained if the Court ordered a bond hearing. Based on the record before the Court, the lack of a bond hearing caused a very significant risk of erroneous deprivation of his liberty interest.

As to the third factor, Respondents surely have a strong interest in immigration proceedings. Respondents have a strong interest in ensuring noncitizens appear for immigration proceedings. But the Court sees little to no governmental interest in not providing process due under § 1226(a), such as a discretionary bond hearing before a neutral decisionmaker. And Respondents do not argue or show that his release would interfere with any removal proceedings or prevent his lawful removal. Removal proceedings may continue while he is out of custody. Moreover, the fiscal and administrative burden of providing a bond hearing before a neutral arbitrator where Petitioner is allowed to present evidence would be minimal. Respondents do not argue that his release would cause greater administrative burden.

Balancing the *Mathews* factors, Petitioner's due process rights were violated by failing to provide him an opportunity to seek release under § 1226(a). Petitioner's liberty interest is substantial, the risk of erroneous deprivation in the absence of a bond hearing under § 1226(a) is very high, the governmental interest in not providing process due under § 1226(a) and its regulations is very low, and the cost to the government of providing such process is minimal.

### III.    <u>The appropriate remedy in this case is release</u>.

Petitioner solely requests release in his Petition. District courts are directed to "dispose of [habeas petitions] as law and justice require." 28 U.S.C. § 2243. The Court has discretion to order

release, which is the traditional habeas remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Here, the Court in its discretion orders his release.  As explained above, Petitioner has been granted SIJ status, which is a path toward legal permanent residency and has certain protections. *See, e.g. Alfaro Herrera v. Baltazar*, No. 1:25-CV-04014-CNS, 2026 WL 91470, at *2 (D. Colo. Jan. 13, 2026). Here, Petitioner has lived in the United States under an SIJ status for more than ten years. His original removal proceedings were dismissed given his SIJ status.  He has been detained since August 2025. Nothing in the record suggests he would not show up to current removal proceedings as scheduled. Respondents have not moved to revoke his SIJ status, and his permanent residency application has been pending for ten years. Respondents have not suggested or argued that release would impede his removal proceedings, that he would not show up to any removal proceedings, or that he poses a danger to the community. Under these unique circumstances, the Court sees no reason for him to stay in custody. *See, e.g., Alfaro Herrera,* 2026 WL 91470, at *11 (ordering release for SIJ status noncitizen); *see also Francisco v. Dedos,* No. 1:25-CV-1229 MIS-GJF, 2026 WL 145456, at *13 (D.N.M. Jan. 20, 2026) (recommending that the court release noncitizen with SIJ status)*, report and recommendation adopted*, No. 1:25-CV-1229 MIS-GJF, 2026 WL 300319 (D.N.M. Feb. 4, 2026).

IV.   **This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226.  Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2).  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the

17

noncitizen's removal during a 90-day removal period, during which the Government "shall" detain the noncitizen.") (citing 8 U.S.C. §§ 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6).  In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period."  § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to" petition the BIA for review of the order.') (citation omitted).  During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that § 1231 applies. Therefore, as of the entry of this order, it appears that the Court retains the ability to order the relief requested in the Petition, i.e., to determine whether §§ 1225 or 1226 applies to his detention pending a decision on removal. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

## CONCLUSION

The Court concludes that Petitioner's detention pending a decision on whether he should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b)(2)(A). Moreover, the Court concludes that Petitioner's procedural due process rights were violated. Accordingly, the Petition (Doc. 2) is granted. Respondents are directed to immediately release Petitioner.

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 2) is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents shall immediately release Petitioner.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **three (3) days** of the entry of this order.

_____/S/_____

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE